UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

                Plaintiff,                Criminal No. 08-29-HA

                                                              OPINION AND ORDER

      v.

SERGIO GONZALEZ-BRIZUELA, et. al.,

                Defendants.

HAGGERTY, Chief Judge:

     Defendants are charged with conducting an illegal gambling business, in violation of 18 U.S.C. § 1955. On May 27, 2008, defendant Santiago Ornelas-Morales filed a Motion for Ruling on an Element of Offense Charged under 18 U.S.C. § 1955 [126]. The court heard oral

Page 1    Opinion and Order

argument on this motion on June 17, 2008. Previously, the court entered an Order [132] allowing joinder in all co-defendants' motions; as such, all co-defendants are considered joined in the motion currently before the court. In addition, several co-defendants filed individual motions to join advancing additional legal arguments and separate factual predicates. The court addresses these arguments and factual assertions as necessary below.

As an initial matter, the court must consider whether it is appropriate to rule on this motion at this stage. Ornelas-Morales bring his motion pursuant to Fed. R. Crim. P. 12(b)(2), which states "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." A pretrial motion is generally capable of determination before trial if it involves questions of law rather than fact. The government agrees that, although uncommon, a district court may dismiss an indictment pretrial for insufficient evidence when the facts are essentially undisputed. *See United States v. Phillips*, 367 F.3d 846, 855 n.25 (9th Cir. 2004). As to Ornelas-Morales' motion, the court agrees that pretrial assessment of evidentiary sufficiency is possible under Rule 12(b)(2). To the extent that co-defendants filed distinct factual predicates regarding their involvement in the cockfighting operation, there are insufficient agreed facts to decide these questions under the standards of Rule 12(b)(2).

## I. Factual Background

The following facts are presented by the government and not opposed by the defendants for purposes of this motion.

Cockfighting is a game or contest of chance in which a knife, gaff or other sharp instrument is attached to the legs of gamecocks or roosters for the purpose of their fighting each

other.  The fight occurs in a pit or ring surrounded by spectators.  The fights between the roosters are supervised by a referee.  The fight is ended when one rooster is dead or refuses to continue to fight.  If not killed during the fight, the losing rooster is almost always killed after the fight.  A series of cockfights conducted in a day is referred to as a derby.  A derby usually consists of dozens of individual cockfights lasting several hours depending on the number of entries.

Participants in cockfighting include: (1) a promoter, who generally makes arrangements and oversees activities at the derby; (2) handlers or pitters, who prepare and handle birds during a fight and may be the actual owner of the bird or someone paid to do the job; (3) referees, who officiate in the pit during the cockfight; (4) spectators, who attend and watch the cockfights; and (4) concession workers, who sell food and drink.

In a derby a number of entrants or cockfighters pay a predetermined entry fee to enter a pre-set number of roosters, usually about five per cockfighter.  The roosters are usually matched within a few ounces of each other for individual fights.  The cockfighter whose roosters win the most fights in a derby wins the purse, which consists of all the entry fees of the derby participants, less approximately 10 % kept by the "house" or promoter(s).  In the event of a tie, the purse is split among the winners.  Sometimes the purse is divided among the first-place and second-place winners.  Side bets also may occur between and among cockfighters that do not involve the overall purse.

Aside from the gambling, the sponsor or promoter often derives profits from admission fees and concession sales, including the sale of alcoholic beverages.  Individuals may profit from the sale or raffle of related paraphernalia, including but not limited to gaffs, tie cords, cages, training equipment, medications, and veterinary supplies.

A mature gamecock resembles an ordinary rooster except it has been surgically altered, trained and conditioned for fighting.  Gamecocks also generally receive vitamins, drugs and other supplements to boost their strength and endurance.

Participants in the cockfighting covered by this indictment would bring roosters to a derby's designated location, and other persons would come to the derby as spectators or workers. One or more of the participants and their roosters would have traveled in interstate commerce. Various persons would perform roles at the derby as described above, including but not limited to: collecting admission and entry fees and bets, weighing the roosters, matching the roosters for fights, keeping written records of the fights, selling and sharpening gaffs, and disbursing the wagered money to the derby's winners.  One or more persons would manage and supervise the fights in the role of a referee.  Persons would sell food and drinks at a concession stand.

Defendant Ornelas-Morales resided on rural property near Beavercreek in Clackamas County, Oregon, where he raised gamecocks.  During execution of a search warrant at defendant's property on March 15, 2008, agents discovered scores of roosters and further evidence of cockfighting, including but not limited to: gaffs, leg bands, medicine and supplements for roosters, syringes, scales, cockfighting literature and video recordings, and financial records related to cockfighting.

The government's evidence includes testimony from two confidential informants who wore audio and video recording devices during cockfighting derbies. The resulting recordings corroborate the informants' accounts that defendant Ornelas-Morales, nicknamed "Chico," brought roosters to numerous derbies, paid the entry fees for the birds, bet on their performance, and handled them in the pits when the birds fought.

Defendant Ornelas-Morales participated in the above-described manner at the following derbies:

1. February 15, 2007, Woodburn, Oregon;

2. April 21, 2007, Sunny Valley, Oregon;

3. June 23, 2007, Grand Ronde, Oregon;

4. July 14, 2007, Grand Ronde, Oregon;

5. December 1, 2007, Grand Ronde, Oregon;

6. January 12, 2008, Grand Ronde, Oregon.

## II.    Discussion

### 1.    Elements of 18 U.S.C. § 1955

In *United States v. Sacco*, 491 F.2d 995, 998 (9th Cir. 1974) (en banc), the Ninth Circuit established three elements necessary to sustain a conviction under 18 U.S.C. § 1955:  (1) there must be a gambling business which is in violation of state law; (2) the gambling business involves five or more persons who conduct, finance, manage, supervise, direct or own all or part of such business; and (3) the gambling business has been or remains in substantial operation for a period in excess of thirty days or has a gross revenue or $2,000 in any single day.

### 2.    Cockfighters as "conductors" or "players"

Defendant Ornelas-Morales challenges the government's assertion that "cockfighters"– those whose roles are limited to training and providing roosters for cockfights –are subject to prosecution under 18 U.S.C. § 1955.

Defendant Ornelas-Morales argues that cockfighters are players or bettors, and are therefore not "persons who conduct, finance, manage supervise, direct or own" a gambling

business. The key issue for this motion is the term "conduct." The Ninth Circuit has defined the term to mean: "Each person, whatever his function, who plays an integral part in the maintenance of illegal gambling, conducts an 'illegal gambling business' and is included within the scope of Section 1955. The sole exception is the player or bettor." *Sacco*, 491 F.2d at 1003.

*Sacco* concerned wagering on horse races and sporting events, and the court included certain non-employees under the "conduct" mantle. Specifically, participants called "splitters" and "layoff bettors" were "conducting" the operation, the court held. *Id*. at 995, 998, 1003. "Splitters" are individuals who seek out bettors, pay winners, and collect from losers, while "layoff bettors" are outsiders whose bets balance a bookmaker's books when more wagers are received on one side of a contest. *Id*. Even though the layoff bettor was not an employee of the bookmaking organization, the court held he was "indispensable to the maintenance of an illegal gambling business." *Id*. at 1003.

The government submits that defendant Ornelas-Morales, who raises, transports, supplies, enters and fights a rooster in a derby helps "conduct" the business. Even though he was a bettor as well, the government argues that defendant Ornelas-Morales played an indispensable and integral role in the gambling organization. The government analogizes to illegal casino operations, and argues that defendant Ornelas-Morales' role is akin to a gambler bringing a roulette wheel or crap table to a makeshift casino and then joining in as a bettor. Such a participant, like defendant Ornelas-Morales, is not a mere bettor but rather an essential "conductor" of the business.

The government's reliance on defendant Ornelas-Morales' "integral" role in the cockfighting operation is misplaced. The court in *Sacco* noted that any person "who plays an

integral part" in the gambling operation "is included within the scope of Section 1955," but the court goes on to explicitly exclude "the player or bettor." *Id.* at 1003. Therefore, defendant Ornelas-Morales' integral role is not dispositive if he is considered a player or bettor. Similarly, boxers are integral to a bookmaking operation that takes bets on boxing matches, but the court could not find that the individual boxers conducted an illegal gambling operation based solely on their indispensable role to the derivative gambling business.

The issue clearly before the court is whether cockfighters–those whose roles are limited to training and providing roosters for cockfights–can fairly be analogized to "players" under § 1955. Under Oregon law:

> "Player" means a person who engages in any form of gambling solely as a contestant or bettor, without receiving or becoming entitled to receive any profit therefrom other than personal gambling winnings, and without otherwise rendering any material assistance to the establishment, conduct or operation of the particular gambling activity. A person who gambles at a social game of chance on equal terms with the other participants therein is a person who does not otherwise render material assistance to the establishment, conduct or operation thereof by performing, without fee or remuneration, acts directed toward the arrangement or facilitation of the game, such as inviting persons to play, permitting the use of premises therefor and supplying cards or other equipment used therein. A person who engages in bookmaking is not a player.

O.R.S. § 167.117(16).

Here, the "game" is the cockfighting derby itself. The cockfighters only hope to receive profit from winning the cockfighting derby. They are players because they receive nothing if they do not win. Their interest in the outcome is limited to the performance of their rooster, not the maintenance or operation of the alleged cockfighting operation. The fact that spectators place bets on the outcome of the derbies does not change their role from that of a player to that of a conductor. To reason otherwise would extend liability under § 1955 to owners and trainers

Page 7    Opinion and Order

of racehorses whose performance were bet upon in an illegal bookmaking operation. Further, the illegality of cockfighting itself is insufficient to establish that those who enter their roosters in a cockfighting derby are conductors of an illegal gambling operation. See *Sacco,* 491 F.2d at 1002 (noting that "a player in an illegal game of chance" was not the intended target of § 1955).

       **3.**     **Five person requirement**

In his memorandum in support of his motion to join [134], defendant John Robertson argues that the government has not established that the alleged cockfighting operation involved five or more persons, as required by § 1955. Defendant Robertson's argument relies on the position that the cockfighters are players or bettors, and therefore cannot serve as one of the five persons required to establish an illegal gambling operation. The court agrees that those co-defendants whose role was limited solely to cockfighting cannot serve as one of the "five or more persons who conduct, finance, manage, supervise, direct or own" the alleged gambling business. There are insufficient facts, however, for the court to determine the role of each co-defendant, other than defendant Ornelas-Morales. Accordingly, the court cannot make a finding as to how many individuals were involved in the alleged cockfighting operation, nor identify which co-defendants may have had roles similar to Ornelas-Morales.

**III.**    **Conclusion**

Defendant Ornelas-Morales' Motion for Ruling on an Element of Offense [126] is GRANTED. Based on the facts asserted by the government, defendant Ornelas-Morales' role was equivalent to a player or bettor, and he is therefore not subject to prosecution under 18 U.S.C. § 1955. As such, those co-defendants whose roles were limited to cockfighting cannot serve as one of the "five or more persons who conduct, finance, manage, supervise, direct or

own" the alleged gambling business.

IT IS SO ORDERED

DATED this  27  day of August, 2008.

    /s/ ANCER L. HAGGERTY

ANCER L. HAGGERTY
United States District Judge